E-FILED
Monday, 09 August, 2021  11:36:12 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 21-CR-30032 |
| | ) | |
| JEREMY BANKS, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America by Douglas J. Quivey, Acting United States Attorney for the Central District of Illinois, and Assistant United States Attorney Sarah E. Seberger, hereby responds in opposition to the defendant's motion to suppress evidence.

### Background

1.    On May 10, 2021, the defendant appeared for arraignment on a one-count indictment charging unlawful possession of a firearm by a convicted felon.

2.    The defendant was detained pending the outcome of this case.

1

3.    On July 29, 2021, the defendant filed a motion to suppress evidence. (d/e 20)

4.    In his motion the defendant claims that the Springfield Police Department conducted an illegal warrantless search of his person and of his home.

5.    The government respectfully requests that this Court deny the defendant's motion to suppress evidence because officers had legally made contact with the defendant outside his home and only entered the home due to the exigent circumstances created by the defendant. Further, the defendant told officers he had a firearm during a legal frisk of his person.

## Facts

On April 8, 2021, Officer Colton Redding of the Springfield Police Department Street Crimes Unit was using the social media application Snapchat to conduct investigations into illegal weapons and narcotics offenses. Officer Redding observed a video posted to the Snapchat "story" of user "ripjama40glock". Snapchat accounts have a username and a display name. The display name for the account "ripjama40glock" is Jeremy Banks. Officer Redding and others from the Springfield Police Department had previously

observed multiple photos and videos from the account of
"ripjama40glock" and identified the owner of the account as Jeremy
D. Banks of Springfield, Illinois.

Snapchat allows users to send videos or pictures from their
smart phones to other Snapchat users, which can only be viewed
once or twice and then are no longer available for viewing. Snapchat
also has a feature, "Story", which allows users to upload pictures or
videos to be viewed by their Snapchat "friends" for a period of 24
hours. The videos and pictures are uploaded in a way which allows
the viewer of the video to tell if the video or picture was captured and
then uploaded to the "Story" immediately, or if the video or picture
was recorded at a previous time and then uploaded to the "Story".
Videos and pictures not captured contemporaneously with the
Snapchat post have a tag in the top left corner, which will indicate
the picture or video came from the "camera roll" of the smart phone,
and how long ago the picture or video was captured by the "camera
roll". If the video is captured and posted contemporaneously with the
Snapchat post, the top left corner will simply indicate how long ago it
was captured and posted.

The video observed and preserved by Officer Redding on April 8, 2021, shows a grill with kebabs and chicken wings. On a ledge attached to the front of the grill was a black semi-automatic pistol. The firearm appeared to officers to be real and not a toy. Banks was known to Officer Redding to be a felon. Officer Redding observed the video approximately six minutes after it was posted to Banks' story. The video did not indicate it came from the cameral roll.

Officers knew the residence of Jeremy Banks from department records as 1716 Matheney Avenue, Springfield, Illinois. Several Springfield Police Department officers then conducted a very short period of surveillance at the residence. Officer Raynolds of the Springfield Police Department observed Banks standing and cooking at a grill that looked just like the one in the Snapchat video located by Officer Redding. Sergeant Justin Spaid then led a group of officers from the back of the residence to the front door to detain Banks. The time from the initial posting of the video to the approach of the defendant's home was roughly 30 minutes.

Banks did not notice Sgt. Spaid approaching his residence. Sgt. Spaid then identified himself by saying "Springfield Police." Banks' was surprised and immediately turned to flee into his residence. Sgt.

4

Spaid and others instructed Banks to not go inside the residence and to not reach for anything. Sgt. Spaid and other officers made physical contact with Banks to prevent his flight. A struggle ensued during which Banks was able to get his door open and move inside. Officers had continued their attempt to detain Banks and were ultimately able to subdue Banks inside his residence. Sgt. Spaid then conducted a frisk of Banks and felt a firearm. As Sgt. Spaid performed the frisk, Banks stated "yeah I got a gun on me." Other officers moved though the house in a protective sweep to check for any other armed persons, while doing so they observed in plain view a box of 9mm ammunition in the living room and a single 9mm bullet on the floor of an upstairs bedroom. Subsequently officers discussed obtaining a search warrant for the house in light of additional contraband found inside. Ultimately, officers were given consent to search the residence by both Banks and his roommate and did not find further contraband.

## Legal Standard

Officers are permitted to make brief, investigatory stops when those stops are based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably

warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). As part of those stops, Officers may frisk for weapons if they have a reasonable, articulable belief that the person is armed, and the safety of the officer or others is in danger. *Id.* at 27. Normally innocent behavior "when isolated from its context may still give rise to reasonable suspicion when considered in light of all of the factors at play." *United States v. Baskin*, 401 F.3d 788, 793 (7th Cir. 2005).

Further, officers are permitted, just as any regular citizen, to walk up to the front door of a residence to talk to a person inside the residence or on the curtilage. *Florida v. Jardines,* 569 U.S. 1, 8 (2013); *Kentucky v. King*, 563 U.S. 452, 469 (2011). An attached porch or deck is part of the curtilage of a home. *See Jardines* at 6.

Officers are able to enter a home justified by exigent circumstances without violating the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 460 (2011) Exigent Circumstances include the "hot pursuit" of a fleeing suspect and to prevent the destruction of evidence. See *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406 (1976).

Officers who arrest someone in a home are able to conduct a limited protective sweep or search of the home to determine if there

6

are other people present in the home for officer safety. *Maryland v. Buie*, 494 U.S. 325 (1990).

The plain view doctrine is an exception to the warrant requirement and has a 3-prong test. *Horton v. California*, 496 U.S. 128 (1990). First, that "the officer has not violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; second that "the incriminating character of the evidence is 'immediately apparent'"; and third that "the officer has a lawful right of access to the object itself." *United States v. Willis*, 37 F.3d 313, 316 (7th Cir. 1994).

## Argument

1.   <u>Officers did not commit a Fourth Amendment violation by walking up to the Defendant's front porch</u>

Girl Scouts selling cookies, Boy Scouts selling popcorn, a traveling vacuum salesman, a police officer: all these groups have the ability and license to walk to a person's front door to knock and talk to the occupant. That license does not go away if a resident is standing on his porch. This case is different than *Florida v. Jardines,* as the Springfield Police Department did not bring a police dog or some other type of specialized equipment to conduct a search. In

7

fact, SPD did not actually enter the defendant's property to conduct a search – they entered to arrest the defendant.  This is also not a case where officers used a GPS tracker (*United States v. Jones* cited by defendant), nor a "spike mike" (*Silverman* cited by defendant), nor a cell phone search (*Riley* cited by defendant). This is a case where a defendant made the decision to let the public intrude inside his home and inside the curtilage of his home by publicly sharing video of his illegal possession of a firearm on the porch of that home. Officers had gone to the home to conduct surveillance within minutes of the defendant posting the Snapchat video. Once the Springfield Police Department saw the defendant standing outside his residence, they switched from surveillance to choosing to address the illegal possession of a firearm by walking up to his front door– conduct which is affirmed by the Supreme Court in *Jardines* to be lawful. This case is also different because unlike *Jardines*, it involves a deadly weapon. Because the officers were legally on the Defendant's porch, they had the ability to either arrest or detain him.

2.   Officers had probable cause to arrest the defendant

Sgt. Spaid had probable cause to believe that the defendant had committed a crime on April 8, 2021. He knew Officer Redding had a

video image of a firearm on a social media account belonging to the defendant. The defendant was known by officers to be a felon. When officers surveilled the residence, they observed the defendant exactly where his snapchat account said he would be–cooking out on a grill with a large front ledge. This also gave officers probable cause to believe that the defendant constructively possessed the handgun they had seen on that grill ledge. "Constructive possession may be established by demonstrating that the defendant knowingly had the power and intention to exercise dominion and control over the object, either directly or through others, thus establishing a nexus between himself and the object." *United States v. Katz*, 582 F.3d 749, 752 (7th Cir. 2009) The defendant had the power, ability, and intention to exercise control over that firearm as evidenced by his public Snapchat video displaying his gun possession.

3.    In the alternative, Officers had reasonable suspicion to conduct a legal *Terry* stop of the defendant

Even if the Court does not find that officers had probable cause, they certainly had reasonable suspicion to stop the defendant and talk to him to gain information. In *United States v. Richmond*, the 7th Circuit affirmed the actions of two patrol officers in

9

Milwaukee who also stopped a man on his porch to investigate their suspicions that he possessed a weapon. *United States v. Richmond*, 924 F.3d 404 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1136 (2020). Richmond was seen by Milwaukee police walking down the street with a large bulge in his pocket. *Id.* at 408. As officers made eye contact with Richmond he suddenly changes direction, started moving faster and walked to the duplex where he lived. *Id.* at 409. Officers exited their squad and approached Richmond on the porch. *Id.* Richmond then set something inside his duplex. *Id.* One of the officers then opened the door and peered inside the duplex and saw a semi-automatic handgun. *Id.* The Seventh Circuit affirmed the *Terry* stop on the curtilage of Richmond's home. *Id.* at 413-415. Further, the opening of the screen door to check for a weapon was also permitted under *Terry* and *Jardines*. *Id.* at 415.

Like the officers in *Richmond,* Sgt. Spaid and the other officers certainly had reasonable suspicion that the defendant was engaged in criminal activity which justified their entry to the porch. When Sgt. Spaid approached the defendant and the defendant then attempted to flee officers rather than stay at his grill, that flight adds to the reasonable suspicion of officers. See *Illinois v. Wardlow*, 528

10

U.S. 119, 124 (2000). By his flight, the defendant also created
exigent circumstances which allowed officers to follow the defendant
into his home.

4.   Officers were justified in their intrusion to the defendant's
home by the exigent circumstances exception to the warrant
requirement

The defendant has no one but himself to blame for the
intrusion into his home–it is he who chose to expose his illegal gun
possession to the public via Snapchat and it is he who also chose to
try to flee from law enforcement into the residence. There are three
long standing doctrines of exigent circumstances which apply in this
case to permit the entry of officers into the defendant's home. First,
the doctrine of the "hot pursuit" of the defendant allowed Sgt. Spaid
and his colleagues to follow the defendant into his home as he moved
that way while resisting officers. This case is similar to *United States
v. Santana* which allows officers making a felony arrest to continue
into a defendant's home to complete the arrest. 427 U.S. 38 (1976).
In *Santana*, police officers saw a woman they had probable cause to
believe had just participated in a felony drug trafficking offense. *Id.*
Santana was seen standing in the open doorway to her home. *Id.* at
40. Officers, without a warrant, walked up to her home, identified

11

themselves and approached Santana to arrest her. *Id.* Santana fled inside her home; officers followed and completed their arrest. *Id.* The Supreme Court upheld that arrest. *Id.* The Supreme Court held that Santana was in a public place and that exigent circumstances allowed police to follow Santana inside her residence. *Id. at 42.* Further they held that a suspect may not defeat an arrest which has been set in motion in a public place. *Id.* at 43. The Supreme Court also noted that a delay by police, would likely have given Santana time to destroy evidence. *Id.* In our case, the defendant was on his porch "exposed to public view, speech, hearing, and touch," a place where he had no expectation of privacy and officers were within the bounds of the law when they approached to arrest the defendant. *Id.* at 42.

Second, Sgt. Spaid and his colleagues are likely also protected by the doctrine that allows for warrantless entry to prevent destruction of evidence. *Kentucky v. King*, 563 U.S. 452 (2011). The officers did not create this exigency; thus officers were able to enter the residence to prevent his tampering with evidence. When the defendant took off and attempted to make it in the residence, it is reasonable to assume he did so in an attempt to hide the semi-

12

automatic firearm that officers knew he possessed outside on the grill. Even if officers had randomly released their hold on the defendant and allowed him to complete his escape, officers would have been justified in following him inside because they were already in pursuit and also, to ensure he did not destroy any evidence inside the home.

Third, officers are permitted to follow the defendant into the home to protect themselves. *See United States v. Kempf,* 400 F.3d 501 (7th Cir. 2005). Should the defendant have been able to access the firearm they saw on the Snapchat video, the defendant could have potentially been a danger to officers thus resulting in a reasonable belief that officers needed to secure the defendant and his firearm to protect themselves and others.

Once officers are inside the defendant's residence, they are able to conduct a protective sweep to determine there aren't other persons with additional weapons lying in wait. *See Buie, supra*; *Richmond, supra.* The officers in this case did just that and in the process located additional contraband in plain view. Officers were legally permitted to collect the ammunition found in the open of the home.

13

Further, if the defendant had not been standing on his porch, officers had sufficient probable cause to seek a search warrant for the residence based on the defendant possessing a firearm as a convicted felon. Officers later obtained consent from the defendant and his roommate to search the home. Thus, the defendant, the firearm, and the ammunition inside the home would have been inevitably discovered by police subject to either that search warrant or consent.

5.    The frisk of the defendant's person for a weapon was proper

Police officers are able to search the defendant incident to his arrest. *See United States v. Robinson*, 414 U.S. 218, 236 (1973) Alternatively, if officers did not have probable cause, but rather reasonable suspicion to believe the defendant was armed, they also had a basis to frisk the defendant to determine if the weapon was still in his possession to ensure the safety of the officers at the scene. *Terry*, *supra* at 27. The defendant's spontaneous statement to officers that he in fact had a gun was not in response to any questioning by the officers but rather occurred when Sgt Spaid neared the firearm the defendant had concealed on his person during the protective frisk.

14

## **Conclusion**

The defendant showed the world that he was in possession of a firearm by sharing with the general public a video via Snapchat. What he didn't consider, is that videos which can be viewed by the general public can also be viewed by law enforcement. In this case, law enforcement was both familiar with the defendant, his status as a felon, and with his Snapchat account. The Springfield Police Department chose to act on that knowledge, and did so lawfully, by collecting additional observations and then choosing to approach the defendant's residence to arrest or detain him. After Sgt Spaid announced himself, the defendant chose to attempt to flee inside his residence. Officers were able to follow the defendant into his residence based on exigent circumstances. Once lawfully in the home, officers properly frisked the defendant for a weapon and performed a safety sweep of the residence. None of those actions ran afoul of the Fourth Amendment.

Therefore, the government requests that defendant's motion to suppress be denied.

Respectfully Submitted,

DOUGLAS J. QUIVEY
ACTING UNITED STATES ATTORNEY

*/s/ Sarah E. Seberger*
Sarah E. Seberger, IL Bar No. 6313942
Assistant United States Attorney
United States Attorney's Office
318 South 6th Street
Springfield, IL 62701
Telephone: 217/492-4450
Email: sarah.seberger@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record.

/s/ Sarah E. Seberger
Sarah E. Seberger
Assistant United States Attorney
United States Attorney's Office