E-FILED
Friday, 17 September, 2021  02:04:53 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 21-CR-30032 |
| | ) | |
| JEREMY BANKS, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America by Douglas J. Quivey, Acting United States Attorney for the Central District of Illinois, and Assistant United States Attorney Sarah E. Seberger, hereby supplements its previously filed response in opposition to the defendant's motion to suppress evidence to add the following:

### Background

On May 10, 2021, the defendant appeared for arraignment on a one-count indictment charging unlawful possession of a firearm by a convicted felon. The defendant was detained pending the outcome of this case.

On July 29, 2021, the defendant filed a motion to suppress evidence. (d/e 20) The defendant argues that the Springfield Police Department conducted an illegal warrantless search of his home when they walked up to him as he stood outside on his front porch. The defendant claims police officers cannot walk onto a person's property to arrest and/or detain them when they can see the person standing outside the home.

On September 1, 2021, the Court held an evidentiary hearing in this matter where the government presented evidence by way of testimony from Springfield Police Department Officers Colton Redding, John Vonbehren, and Justin Spaid. The government admitted six exhibits consisting of a recording and a still photo from the defendant's Snapchat video, and recordings and still photographs from body worn camera footage.

Springfield Police Department officers had probable cause to arrest the defendant and reasonable suspicion to conduct a *Terry* stop of the defendant. Because the defendant was in full view to the public by standing outside his home on the porch, the Springfield Police department was able to walk up to the defendant to detain and arrest him. The subsequent entry and search of the defendant's

home was not illegal but caused by the exigent circumstances created by the defendant when he chose to resist commands and try to flee inside his residence.

## Facts

On April 8, 2021, Officer Colton Redding of the Springfield Police Department Street Crimes Unit was using the social media application Snapchat to conduct investigations into illegal weapons and narcotics offenses. Officer Redding came across a video of a semi-automatic handgun laying on the edge of a grill. Officer Redding knew the account that posted the video to belong to Jeremy Banks. Officer Redding identified Banks as the owner based on posts of "selfies" or photos taken by the person holding the phone and because the Snapchat account information was posted on Banks' Facebook account.

Officer Redding observed the video approximately six minutes after it was posted to Banks' story. The video did not indicate it came from the cameral roll. Officer Redding recognized the voice in the video as that of Jeremy Banks. Officer Redding was familiar with Banks' voice from previous in-person interactions and from monitoring Banks' account for the proceeding two months.

Officers knew the residence of Jeremy Banks from department records as 1716 Matheny Avenue, Springfield, Illinois. A group of Springfield Police Department officers then drove by the residence to confirm the location seen on the video. Officer VonBehren had also seen the video and as he drove by the defendant's house recognized the location from the video. Further, VonBehren observed Banks outside his home grilling on the porch. Officer VonBehren noticed that Banks was watching the truck containing the officers as Banks continued to stand on his front porch.

Sergeant Justin Spaid then led a group of officers from the back of the residence to the front door to detain Banks. According to the testimony of Officer Redding, the time from when the video was posted to when officers approached Mr. Banks' house was approximately 16 minutes. Banks did not notice the officers approaching his residence. Sgt. Spaid then identified himself by saying "Springfield Police." Banks was surprised and immediately turned to flee into his residence. Sgt. Spaid and others instructed Banks to not go inside the residence and to not reach for anything. Sgt. Spaid and other officers made physical contact with Banks to prevent his flight well before the door to the residence was ever

4

opened by Banks. However, Banks was able to get his door open and move inside. Officers had continued their attempt to detain Banks and were ultimately able to subdue Banks inside his residence. Sgt. Spaid then conducted a frisk of Banks and felt a firearm. As Sgt. Spaid performed the frisk, Banks stated "yeah I got a gun on me." Other officers moved through the house in a protective sweep to check for any other armed persons, while doing so they observed in plain view a box of 9mm ammunition in the living room, and a single 9mm bullet on the floor of an upstairs bedroom. Subsequently officers discussed obtaining a search warrant for the house in light of additional contraband found inside. Ultimately, officers were given consent to search the residence by both Banks and his roommate and did not find further contraband.

## Argument

Officers did not commit a Fourth Amendment violation by walking up to the Defendant's front porch

Police Officers are not required by the Constitution to ignore a person committing a crime because the person is standing on his front porch. *See California v. Ciraolo*, 476 U.S. 207, 213 (1986) ("The Fourth Amendment protection of the home has never been extended

to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.") Banks shared his gun possession with his followers on Snapchat, which included members of law enforcement, then when law enforcement drove down a public roadway, they could clearly see the defendant outside his home. The law does not require officers to ignore the danger posed by the defendant's illegal firearm possession because he is standing on his porch rather than the sidewalk.

Further, officers needed to act quicky to secure the defendant to both ensure public safety and prevent the defendant from hiding or altering evidence. Sgt. Spaid testified at the hearing about a past incident when he had not detained a suspect before obtaining a warrant, the subject was able to hide a firearm so thoroughly that law enforcement was then unable to locate the weapon after securing the warrant.

The circumstances of this case are very similar to a case from the Northern District of Illinois, *U.S. v. Luckey*. 515 F. Supp. 3d 870, 877 (N.D. Ill. 2021). Troopers with the Illinois State Police were reviewing publicly accessible Snapchat videos that were being posted from the area where they were assigned to patrol. *Id.* They observed a

6

video of a man with a firearm. *Id.* That same man then posted a video of him smoking what appeared to the Troopers to be a marijuana "blunt" or cigarette. *Id.* Troopers had no information on the identity of the man and thus did not know if he had a concealed carry permit or if he was a felon. *Id.* Geolocation data from the video led officers to an area in Hazel Crest, Illinois. *Id.* Upon arriving in the area a Trooper saw the man depicted in the video in the front yard of a house. *Id.* Troopers approached the man who then pulled the gun out of his waistband and tossed it into a nearby car. *Id.* Officers then detained the defendant, secured the weapon, and determined the defendant did not have any firearms license and that he was a convicted felon. *Id.*

Defendant Luckey challenged the *Terry* stop conducted in what turned out to be the driveway of his girlfriend's home. *Id.* While the main issue was the fact the defendant didn't have an expectation of privacy at his girlfriend's residence, the Northern District noted that the Fourth Amendment allows justified *Terry* stops on the curtilage of someone's home. *Id.* at 877. The Northern District also determined that based on all the information known to the Troopers that there was reasonable suspicion to conduct a *Terry* stop. *Id.* at 878.

7

While the circumstances of Mr. Banks' arrest are very similar to that of Defendant Luckey, in this case Springfield Police Department officers had even more information – they knew Banks and knew his status as a felon which meant he was in fact committing a crime on his front porch by possessing the weapon.

Respectfully Submitted,

DOUGLAS J. QUIVEY
ACTING UNITED STATES ATTORNEY

*/s/ Sarah E. Seberger*
Sarah E. Seberger, IL Bar No. 6313942
Assistant United States Attorney
United States Attorney's Office
318 South 6th Street
Springfield, IL 62701
Telephone: 217/492-4450
Email: sarah.seberger@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record.

*/s/ Sarah E. Seberger*
Sarah E. Seberger
Assistant United States Attorney
United States Attorney's Office