E-FILED
Wednesday, 29 September, 2021  01:23:30 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cr-30032 |
| | ) | |
| JEREMY BANKS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter is before the Court for a Report and Recommendation on Defendant Jeremy Banks' Motion to Suppress Evidence (d/e 20) (Motion). For the reasons set forth below, this Court recommends that the Motion should be DENIED.

## PROCEDURAL BACKGROUND

On May 5, 2021, the Grand Jury in this District indicted Banks on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  The Indictment alleged that on April 8, 2021, Banks possessed a 9 mm semi-automatic Springfield XDE pistol.  The Indictment further notified Banks that the firearm is subject to forfeiture if he is convicted. Indictment (d/e 1).

On July 29, 2021, Banks filed the Motion.  On September 1, 2021, the Court held an evidentiary hearing on the Motion.  Banks appeared in person with his attorney Daniel Noll.  The Government appeared by Assistant U.S. Attorneys Sarah Seberger and Matthew Weir.  At the conclusion of the hearing, neither party requested preparation of a transcript of the hearing.  The Court authorized the parties to submit post-hearing memoranda.  The parties have completed post-hearing briefing.

<u>STATEMENT OF FACTS</u>

The evidence presented established that on April 8, 2021, Springfield, Illinois, Police Officer Colton Redding was monitoring Banks' Snapchat account as part of his duties with the Springfield Police Department's Street Crimes Unit.  Office Redding had monitored Banks' Snapchat account for several months along with other social media sites.  At 8:01 p.m., Officer Redding saw a video on Banks' Snapchat account of a person grilling a large amount of meat on a barbeque grill.  Officer Redding saw what appeared to be a real semi-automatic pistol lying on a shelf located in the front of the grill.  Officer Redding knew that Banks was a convicted felon. Officer Redding could tell from the markings on the Snapchat video that he viewed the video six minutes after it had been posted.  Officer Redding saved a copy of the video.

The video was admitted into evidence.  The video showed a pistol lying on the ledge attached to the front of a grill.  A person was grilling a large amount of meat on the grill at the time.  Voices were also recorded on the video.  Officer Redding recognized Banks' voice recorded on the video. Officer Redding was familiar with Banks' voice from monitoring Banks' Snapchat page and from other encounters with Banks.

Officer Redding conferred with other members of the Street Crimes Unit regarding the video.  The Springfield Police Department records indicated that Banks lived at 1716 East Matheny Avenue, Springfield, Illinois (the Residence).  The officers decided to go to the Residence to detain Banks on his porch to investigate whether he had a weapon in his possession.

One group of officers drove by the Residence.  These officers confirmed that Banks was on the porch of the Residence next to a barbeque grill.  The officers also confirmed that the backdrop shown in the Snapchat video was the same as the porch on the Residence.  The officers parked a block away from the Residence.  A second group of officers met in the alley behind the Residence.  The officers who drove by the Residence radioed the officers in the alley behind the Residence to confirm that Banks was on the porch of the Residence with the grill as depicted in

the Snapchat video.  By 8:10 p.m., the officers in the alley approached the Residence from behind.  Several of these officers recorded the incident on body cameras.  The audiovisual recordings from several body cameras were admitted into evidence.  The body camera videos recorded the time of the events.

Springfield Police Sergeant Justin Spaid stepped onto the porch to detain Banks and investigate the ownership of the firearm.  Sergeant Spaid was in uniform and announced, "Springfield Police."  Banks pulled away and tried to get into the Residence.  Sergeant Spaid told Banks to stop and tried to stop Banks from going into the Residence.  The two men went through the doorway into the front room of the Residence.  Sergeant Spaid conducted a pat down search of Banks for weapons.  Banks admitted that he had a firearm on his person.  Other officers conducted a security sweep of the Residence and found a box of ammunition in plain view in the front room, and a single bullet in an upstairs bedroom.  Banks was arrested for being a felon in possession of a weapon.

## ANALYSIS

The Fourth Amendment protects individuals from unreasonable searches and seizures.  More than 50 years ago, the Supreme Court established that an officer could detain a person, question the person, and

conduct a pat-down search for officer safety if the officer had reasonable

articulable suspicion of criminal activity.  Terry v. Ohio, 392 U.S. 1, 21

(1968).  Reasonable suspicion is "something less than probable cause but

more than a hunch." United States v. Baskin, 401 F.3d 788, 791 (7th Cir.

2005).

> Reasonable suspicion is not an onerous standard: Reasonable
> suspicion requires "considerably less" than a preponderance of
> the evidence and "obviously less" than probable cause to effect
> an arrest. United States v. Esquivel– Rios, 725 F.3d 1231, 1236
> (10th Cir. 2013). "To satisfy the reasonable suspicion standard,
> an officer need not 'rule out the possibility of innocent conduct,'
> or even have evidence suggesting 'a fair probability' of criminal
> activity." Id. (quoting Poolaw v. Marcantel, 565 F.3d 721, 736
> (10th Cir. 2009)). Indeed, we have held that factors consistent
> with innocent travel may contribute to reasonable suspicion.
> United States v. Valles, 292 F.3d 678, 680 (10th Cir. 2002). As
> long as an officer has "a particularized and objective basis for
> suspecting an individual may be involved in criminal activity, he
> may initiate an investigatory detention even if it is more likely
> than not that the individual is not involved in any illegality."
> United States v. Johnson, 364 F.3d 1185, 1194 (10th Cir.
> 2004).

United States v. Petit, 785 F.3d 1374, 1379-80 (10th Cir. 2015) (emphasis in

the original) (cited with approval in United States v. Sanford, 806 F.3d 954,

959 (7th Cir. 2015)).

In this case, the officers clearly had a particularized objective basis

for suspecting that Banks may be involved in the criminal activity of

possession of a weapon by a felon.  The officers knew Banks was a

convicted felon. The officers knew that just a few minutes earlier Banks posted a video of a person grilling meat on a barbeque grill. Banks was heard on the recording. What appeared to be a real semi-automatic pistol was sitting of the front ledge of the grill. Officers drove past the location and saw Banks on the front porch grilling meat. The officers had ample particularized suspicion that Banks had some connection to the firearm on that grill and may have been in possession of that weapon. The officers had reasonable suspicion to detain Banks and investigate the matter. The officers further could reasonably pat Banks down for officer safety.

Banks makes much of the fact that he was on his front porch, and so, was within the curtilage of his home. The Seventh Circuit already decided that law enforcement officers may detain a person on his front porch, within the curtilage of his home, to conduct an investigative stop. In United States v. Richmond, 924 F.3d 404, 409 (7th Cir. 2019), officers had reasonable suspicion that Richmond was carrying a weapon. The officers stopped Richmond on the front porch of Richmond's home and detained him to investigate whether he had a weapon. The officers further opened the screen door of his home to retrieve a weapon that Richmond had placed there just before the officers detained him. Id. The Seventh Circuit specifically held that officers with reasonable suspicion may detain a

person and conduct an investigative stop in the curtilage of the home,
including on the front porch.  Richmond, 924 F.3d at 412-13.  The search
may include a protective frisk for weapons.  Id. at 413-14.  Under
Richmond, the officers conducted a valid investigative detention of
Defendant Banks on his porch.

Banks relies on cases discussing warrantless searches and arrests to
support his position.  The cases do not address investigative stops such as
the one that occurred here.  The cases do not apply.

Once Banks was properly detained on the porch, the officers were
justified to follow Banks when he tried to flee into the Residence to
complete the investigation and to keep Banks from destroying evidence.
United States v. Santana, 427 U.S. 38, 42-43 (1976); Kentucky v. King, 563
U.S. 452, 460-69 (2011).  Once in the home, the officers properly
conducted a limited sweep for other weapons for officer safety.  Maryland
v. Buie, 494 U.S. 325, 334 (1990).  The officers did not violate Banks'
rights.

THEREFORE, THIS COURT RECOMMENDS that Defendant Jeremy
Banks' Motion to Suppress Evidence (d/e 20) should be DENIED.

The parties are advised that any objection to this Report and
Recommendation must be filed in writing with the Clerk of the Court within

fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  <u>See</u> <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  <u>See</u> <u>Local Rule</u> 72.2.

ENTER:   September 29, 2021

s/ *Tom Schanzle-Haskins*

TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE